UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

GREGORY F. MANARINO, d/b/a
GREGORY F. MANARINO, President of                    Case No. 05-15403 K
Contaract Foods, Inc.
                              Debtor
------------------------------------------------------------------

OPINION AND ORDER

The record of the proceedings involving this Debtor is somewhat complex, and it appears that, as a consequence, the docket is not as clear and complete as it should be. Hence, the Court will attempt a simplified statement of the current posture. Gregory Manarino was the sole officer, director, and shareholder of a wholesale produce business called Cataract Foods, Inc. He and his wife filed a Chapter 7 Petition on September 23, 2004, and he apparently ceased operation of the business. (Case No.04-17013 K)

It appears to be undisputed that Cataract Foods, Inc. was subject to the trust restrictions of the Perishable Agricultural Commodities Act ("PACA"). 7 U.S.C. § 499 e(c)(2). Consequently, Gregory Manarino was also subject to the trust restrictions of PACA as the person in control of Cataract Foods. 7 U.S.C. § 499 a(b)(1) & (6). Two of the PACA beneficiaries filed what must be characterized as "dischargeability complaints" in the 2004 Chapter 7 case. (AP No. 04-1353 K and AP No. 05-1046 K)

Manarino was discharged of his other debts on January 13, 2005. Thereafter, he

alone filed this Chapter 13 case (on September 13, 2005). In this Chapter 13 case, the only creditors he lists are the two PACA beneficiaries, in a combined dollar amount of approximately $66,000.

The Adversary Proceedings in the Chapter 7 case have been held in abeyance while Manarino has formulated his Chapter 13 Plan. He now proposes to pay $175 per month for 36 months to the PACA beneficiary creditors. This would yield to them approximately 12% of the amount of their claims. However, the PACA beneficiaries filed their claims as "secured claims." Because secured claims must be paid in full under the provisions of a Chapter 13 plan, Manarino has objected to the claims, asserting that they are unsecured claims only. And so the objection is dispositive of the question of whether the Debtor may propose to pay those claims <u>less</u> than in full (all other things being equal, which they are not[1]).

The claimants cite ample case authority for the proposition that PACA trust claims are often treated in bankruptcy cases as "'superpriority' secured claims." *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir. 2004) (while PACA regulations permit PACA trustee, i.e. dealer, to grant security interest in PACA trust assets, such a granted interest is secondary and specifically avoidable in order to satisfy PACA debts, *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995) (PACA trust provides PACA beneficiaries the "right to recover against [PACA trustees] superior to all creditors, including secured creditors"); *see E. Aramta, Inc. v. Korea Commercial Bank of New York,* 367 F.3d 123, 128 (2d Cir. 2004).

---

[1] The "good faith" of the Debtor's plan will be addressed later in this decision.

These cases, however, are inapposite, for they deal with conflicting claims of creditors to assets of a <u>commodity business</u>.  If Cataract Foods, Inc. were the debtor here, the PACA beneficiaries might have pre-eminent claims against the assets and revenues of that business under the cited cases.  Similarly, if the Chapter 13 Debtor here derives his income or assets from Cataract, those pre-eminent claims might prime all of his other creditors (though here there are no other creditors) and force the Debtor into Chapter 7 or 11, presenting a 11 U.S.C. § 523 (a)(4) dischargeability matter to the extent that he has been "out of trust."

But the Debtor here seems now to be W-2 wage earner, employed by a company (Sevenson Environmental) of which he does not appear to be an "insider."

This distinction is ignored by the PACA creditors.  They insist that they are entitled to be paid in full as "secured creditors" even though there seem to be no PACA assets in this estate and even though the Debtor seemingly derives no income from any assets of Cataract Foods, Inc., or of any other commodity dealer.

If the creditors' arguments here were to be accepted, the logical extension would be that every dollar ever earned from any source by any debtor who once was, but is no longer, a statutory trustee, is subject to their trust claims.  This would be a nonsensical result, of course.  Such a burden of involuntary servitude is limited to the garnishment rights provided by the applicable non-bankruptcy laws.  In New York, that would be a 10% garnishment limit on this Debtor's earnings.[2]

And so this Court rejects the claimant's assertion of "secured status" and sustains

---

[2] In some other states, garnishment limits are be much higher.

the Debtor's objection to their claims.

That said, it is often the case that a Chapter 7 debtor who is faced with dischargeability complaints either converts the case to Chapter 13 or (as is the case here) files a subsequent Chapter 13 for the sole purpose of obtaining the "super discharge" as to fiduciary fraud claims (or other fraud claims). Such cases, in this writer's view, presumptively lack "good faith," though the Court always encourages the debtor to negotiate with the creditor holding the nondischargeable debt (or a debt that might, if adjudicated, be found to be a nondischargeable debt[3]) toward a consensual Chapter 13 plan or at least a plan that would be "fundamentally fair" and thus satisfy the "good faith" requirement of 11 U.S.C. § 1325.

Lack of "good faith" in Manarino's proposed Plan has not yet been asserted here. But the Court takes judicial notice of the Schedules and Statements filed by the Debtor in this Chapter 13 case. The Debtor, who received a discharge of his other debts in the still-pending Chapter 7 case,[4] lists no other debts. He no longer owns his home, stating that it was sold at foreclosure. And he apparently leases rather than owns any motor vehicles. Consequently, he does not need a Chapter 13 case to save a home from a mortgage default, or a car from repossession. As to the home, there is, however, a question. The home was purportedly sold at foreclosure, yet he still lives in it and he represents that he pays $1500 per month in rent plus the other carrying costs of home ownership. One might ask, consequently, the identity of the current

---

[3] The Debtor does not concede nondischargeability in the adversary proceedings that have been held in abeyance.

[4] The Chapter 7 case is pending because the Chapter 7 Trustee is administering assets, and not because of any recalcitrance or misfeasance by the Debtor.

owner.  Perhaps it is an arms-length landlord.  But if it is a family member or other "insider," how was it acquired?  Did the family member simply take over the mortgage debt, or was some cash consideration paid?  If the latter, what was the source of those assets?  Was it from PACA trust funds?  The same may be asked as to the source of the Debtor's exempt retirement portfolio.

Additionally, the Schedules represent that slightly more than 180 days after the filing of the Debtor's Chapter 7 case,[5] Manarino's uncle died leaving the Debtor an inheritance, which Manarino renounced after he was discharged in Chapter 7, and before he filed this Chapter 13 case.  Under the circumstances, such renunciation may have been a fraudulent transfer as to the PACA beneficiaries, or at least an "unfair" action by one defending a dischargeability action and who then seeks a "haven" in Chapter 13.

That aside, even if one assumes that the claimed housing expenditures are themselves "fair and equitable" in all regards under 11 U.S.C. § 1325, the Debtor's Schedules I and J reflect a disposable monthly income of $280 a month, yet he proposes to pay only $175 per month.  The difference between $175 per month for 36 months (as the Debtor proposes) and $280 per month <u>for a full five year period</u>, is significant.  The latter would yield a 20% to 25% distribution to the PACA claimants, whereas the Debtor's proposal would yield only about 12% to those claims.

---

[5]See 11 U.S.C. § 541 (a)(5)(A) as to inheritances within 180 days after a bankruptcy filing.

CONCLUSION

In the view of the Court, the parties should negotiate toward a confirmable plan in light of the above factors, and against the backdrop of the fact that the best that the creditors can hope for, in light of today's decision (absent settlement) is (1) defeat of any Chapter 13 plan proposed by the Debtor, (2) ultimate success in obtaining non-dischargeable money judgments in the Chapter 7 adversary proceedings, and then (3) 10% garnishment of the Debtor's wages, but only for as long as the Debtor chooses to work. (The Court has no idea of the Debtor's age or future earning potential.)

In the meantime, it is Ordered that the claims filed in the Chapter 13 case by the PACA claimants shall be allowed only as "unsecured claims." The PACA claimants shall be and are deemed to object to Manarino's Plan on grounds of lack of "good faith" under 11 U.S.C. § 1325.

The next scheduled hearing date for confirmation of the existing plan is April 20, 2006 at noon, which is also the next return date on the pre-trial proceedings in the dischargeability adversary proceedings. The parties will report to the Court then on the prospects for a negotiated settlement.

SO ORDERED.

Dated:      Buffalo, New York
            March 9, 2006

_____
U.S.B.J.