UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

Gregory F. Manarino, d/b/a Gregory F. Manarino,
President of Cataract Foods, Inc.
Patricia D. Manarino                                    Case No. 05-15403 K
                        Debtors
------------------------------------------------------------------


OPINION AND ORDER


   The PACA creditors have sought reconsideration of this Court's Opinion and Order dated March 9, 2006 on the grounds that "if all [PACA] trustees were allowed to file bankruptcy actions with the PACA trust claims as unsecured creditors simply through the fact that the Debtor has now found new employment in which he is not in control of the company, all former owners, principal shareholders and trustees of corporations doing business with PACA creditors would be free from any liability whatsoever."

   This argument is patently incorrect as a matter of law, and is the only new argument raised, and so the motion is summarily denied.[1]

   Either the PACA creditors did not read the Court's Opinion and Order carefully enough, or they forgot a still-earlier ruling in this case by the Court,[2] or they do not understand the interplay between Chapters 7 and 13 in cases such as this, as those Chapters existed prior to the 2005 overhaul of the Bankruptcy Code. The Court presumes the last, and therefore will explain the interplay with regard to assertions that a Debtor who had trust obligations has

---

[1] See the final paragraph of this Decision.

[2] See footnote 1.

violated that trust.

Breaches of statutory trusts or express trusts are treated as "fiduciary fraud" claims to be plead under 11 U.S.C. § 523(a)(4) in a Chapter 7 case. However, prior to the 2005 amendments (which are known as "BAPCPA"), there existed what is known as the "super discharge" in Chapter 13 cases. Section 523(a)(4) claims were <u>not</u> among the claims that could <u>not</u> be discharged in a Chapter 13 case. (See the pre-BAPCPA version of § 1328(a).) Hence, a debtor who could meet all of the other Chapter 13 standards including "good faith" (see 11 U.S.C. § 1325) and who was able to complete his or her plan, received a "super discharge" even as to debts incurred through fraud, embezzlement, larceny, wilful and malicious injury, and other egregious acts.

The "super discharge" was created by Congress in the Bankruptcy Reform Act of 1978, as an incentive for debtors to choose to file under Chapter 13 rather than Chapter 7, and thereby to promote repayment of debts in whole or in part.

Congress has now changed its mind. In the new version of 11 U.S.C. § 1328(a)(2), all debts that would be non-dischargeable in a Chapter 7 case are non-dischargeable in Chapter 13. However, BAPCPA is not applicable to this Debtor's Chapter 13 case because the pertinent provisions of BAPCPA apply only to cases filed on or after October 17, 2005, and this case was filed months earlier.

The PACA claimants ignore the fact that the law applicable to this case is directly contrary to their position. Instead, they ask the Court to create a remedy for them out of whole cloth - grant them a lien on all of the Debtor's future earnings, because if the Debtor were in

Chapter 7, they would be able to establish that they hold non-dischargeable claims. The argument is simply absurd. This Nation did away with slavery in 1863.

That being said, this Court's decision of March 9, 2006, explicitly laid out the difficult path that this Debtor must travel in order to obtain the "fresh start" that the pre-BAPCPA Chapter 13 law provides to a "worthy" debtor.

To be worthy of the Chapter 13 super discharge, the Debtor's plan must (among other things) be a "good faith" plan. In the Court's March 9 Decision and Order, the Court ruled that "the PACA claimants shall be and are deemed to object to Manarino's Plan on grounds of lack of 'good faith' under 11 U.S.C. § 1325."

Moreover, this Court said that "it is often the case that a Chapter 7 Debtor who is faced with dischargeability complaints either converts the case to Chapter 13 or (as is the case here) files a subsequent Chapter 13 for the sole purpose of obtaining the 'super discharge' as to fiduciary fraud claims (or other fraud claims). Such cases, in this writer's view, presumptively lack 'good faith,' though the Court always encourages the Debtor to negotiate with the creditor holding non-dischargeable debt (or a debt that might, if adjudicated, be found to be a non-dischargeable debt) toward a consensual Chapter 13 Plan or at least a plan that would be 'fundamentally fair' and thus satisfy the 'good faith' requirement of 11 U.S.C. § 1325."

The Court is at a loss for how to say more clearly, than it did in the March 9 ruling, that the premise of the current motion for reconsideration is patently wrong. It is simply not true that if PACA trust claims are treated as unsecured claims in the Chapter 13 case of a PACA trustee who has obtained non-PACA related employment, then "all former owners,

principal shareholders and trustees of corporations doing business with PACA creditors would be free from any liability whatsoever." The PACA claimants have the right to object to confirmation of the Chapter 13 Plan if the Plan or the case are not proposed in good faith. As this Court has previously held, this case and Plan are <u>presumptively not</u> in good faith because the only creditors are creditors who have filed dischargeability complaints in the Debtor's earlier Chapter 7 case. The Court also laid out other bases for the proposition that the currently proposed plan raises other questions regarding good faith. The Court has suggested that the parties negotiate toward a consensual plan. But if the Debtor is unable to convince the Court that his plan proposal meets the "good faith" test, in light of the pending complaints in the Chapter 7 case, then the Chapter 13 case must be dismissed, and then the Debtor will have to defend the dischargeability complaints. If that happens, and if the PACA claimants prevail on the merits of their dischargeability actions, then the PACA claimants will have a money judgment. However, collection of money judgments in the State of New York as against the judgment debtor's <u>wages</u>, is limited to 10%.

These facts were set forth in the March 9, 2006 Decision, but perhaps not clearly enough. The Court would ask the PACA claimants to please re-read that Decision in light of this additional explanation. Their argument that they should have a super priority lien claim against all this Debtor's future wages is as absurd in a Chapter 13 context as it would be if they had obtained money judgment against Manarino before his bankruptcy and sought to garnish 100% of his wages in violation of State Law.

The Court admonishes the PACA claimants to stop wasting the time or money of

others by making up their own theories of law. The cases they cite are inapposite, as this Court has previously stated, because they all deal with assets or proceeds or revenue streams generated from PACA trust property. This Debtor's income does not come from PACA trust property. (His residence and retirement account may be another matter, however. And his renunciation of an inheritance may be another matter still. These were addressed in the March 9, 2006 decision.)

The motion for reconsideration adds nothing to the arguments that were raised before the Court before. There is no need for the Debtor to respond, and no need for oral argument. The current motions are summarily denied.

All so said about the interplay between Chapter 7 and Chapter 13, the Court told counsel on both sides at the first pre-trial conference[3] <u>following</u> the Debtor's filing of <u>this</u> case - - the Chapter 13 case - - that if the PACA claimants are displeased with the Debtor's Chapter 13 proposals, the Court will order that the dischargeability complaints in the Chapter 7 case will proceed <u>first</u>. It is their choice because their actions were filed in the <u>prior</u>, <u>voluntary</u>, Chapter 7 case. They may choose to move toward a non-dischargeable money judgment with a 10% garnishment limit, or choose to negotiate a consensual Plan (or non-bankruptcy settlement) with the Debtor. It is Ordered that counsel for the Debtor contact counsel for the PACA creditors promptly with the Debtor's last, best and final offer to settle their clients' differences either within or without the 5-year constraints of Chapter 13. The parties shall report the <u>procedural</u> results on <u>April 20, 2006 at NOON</u> in Niagara Falls or by letter to the Court before that date, and if either side requests, a discovery deadline order in the Chapter 7 dischargeability Adversary

---

[3] It was a conference regarding the dischargeability complaints in the earlier Chapter 7 case.

Proceedings will issue.

        SO ORDERED.

Dated:        Buffalo, New York
                  March 31, 2006

                                                      _____
                                                                          U.S.B.J.